# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| NECHELLE FISHER, | |
| *Plaintiff,* | Civil Action No.: |
| v. | |
| GLOBAL CONCESSIONS, INC.; GLOBAL CONCESSIONS II, LLC; *and* GLOBAL CONCESSIONS III, LLC; *dba* "SWEET GEORGIA'S JUKE JOINT," | _____ |
| *Defendants.* | **JURY DEMAND** |

## COMPLAINT

Plaintiff Nechelle Fisher files this Complaint against Global Concessions, Inc.; Global Concessions II, LLC; And Global Concessions III, LLC d/b/a Sweet Georgia's Juke Joint, and alleges as follows:

### NATURE OF THE ACTION

1.     This is an action for unpaid minimum wages, unpaid overtime wages, and retaliation under to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").

2.     Plaintiff alleges that Defendants willfully violated the FLSA by failing to pay her the federal minimum wage and the required overtime premium rate for all hours worked over 40 per week. Specifically, Plaintiff

alleges that Defendants paid Plaintiff as a "tipped employee" because she received tips from Defendants' customers. Defendants claim a "tip credit" against their federal minimum wage obligations and pay less than $7.25 per hour in direct wages, but they fail to comply with legal requirements for taking the tip credit. Accordingly, Defendants cannot claim the tip credit and must pay Plaintiff the full minimum wage and required overtime premium rate for all hours worked, including those over 40 per week.

3.    Plaintiff further alleges Defendants retaliated against her after she complained that she was not permitted to retain all of her tips.

## THE PARTIES

4.    Defendant Global Concessions, Inc. is a Georgia corporation with its principal office address located at P.O. Box 20905, Airport Mail Facility, Atlanta, Georgia 30320.

5.    Defendant Global Concessions II, LLC is a Georgia company with its principal office address located at 7700 Spine Road, Hartsfield/Jackson International, Concourse T, Third Floor Site TS3-3-3G, Atlanta, Georgia 30320.

6.    Defendant Global Concessions III, LLC is a Georgia company with its principal office address located at P.O. Box 20905, Airport Mail Facility, Atlanta, Georgia 30320.

7.     Defendants may be served with process through their registered agent, Terrence Harps, at 7700 Spine Road, Hartsfield/Jackson International, Concourse T, Third Floor Site TS3-3-3G, Atlanta, Georgia 30320.

8.     Plaintiff is Georgia resident who worked for Defendants as tipped employee within three years preceding the filing of this Complaint.

## JURISDICTION & VENUE

9.     Under 28 U.S.C. § 1331 this Court has jurisdiction over Plaintiff's claims because the claims raise questions of federal law.

10.     Under 28 U.S.C. § 1391(b) and Local Rule 3.1(B) venue is proper in this division because at least one defendant resides in this division and a substantial part of the events or omissions giving rise to the claims occurred in this division.

11.     Defendants are subject to personal jurisdiction in this Court because they are Georgia companies with their principal office address located in Georgia and conduct substantial business in Georgia.

## DEFENDANTS ARE AN ENTERPRISE COVERED BY THE FLSA

12.     Defendants own and operate Sweet Georgia's Juke Joint ("the Juke Joint") at the Atlanta-Hartsfield International Airport for the common business purpose of selling food and drinks.

13.     Defendants are under the common ownership and control of

Terrence Harps, the CEO of Global Concessions, Inc.

14.    Defendants engage in commerce or the production of goods for commerce.

15.    Defendants employ two or more individuals who engage in commerce, the production of goods for commerce or who handle, sell, or work with goods or materials that have moved in or were produced for commerce.

16.    Defendants employ two or more individuals who regularly communicate across state lines using the interstate mail and telephone while performing their job duties.

17.    Defendants employ two or more individuals who regularly communicate across state lines using the internet while performing their job duties.

18.    Defendants' employees handle and use materials that have traveled through interstate commerce, such as cleaning supplies, computers, telephones, and food and beverage products, while performing their job duties.

19.    Defendants employ two or more individuals who process credit card transactions while performing their job duties.

20.    Defendants' gross annual sales and business done for each of the three years preceding the filing of this Complaint exceeds $500,000.

## DEFENDANTS EMPLOYED PLAINTIFF

21.   Defendants employed Plaintiff as a server at the Juke Joint.

22.   Defendants had the authority to hire and fire Plaintiff.

23.   Defendants determined the employment policies applicable to Plaintiff.

24.   Defendants had the authority to modify the employment policies applicable to Plaintiff.

25.   Defendants determined how much, and in what manner, Plaintiff was compensated.

26.   Defendants maintained Plaintiff's employment records, such as time and pay records.

## PLAINTIFF WAS PAID AS A "TIPPED EMPLOYEE"

27.   Plaintiff worked for Defendants as a server at the Juke Joint from approximately July 18, 2018, to February 8, 2020.

28.   During Plaintiff's employment, customers of the Juke Joint regularly left discretionary gratuities (or "tips") for her benefit.

29.   The tips left by the customers Plaintiff served at the Juke Joint belong to Plaintiff.

30.   Because Plaintiff regularly received tips from Defendants' customers, Defendants paid her as a "tipped employee" and took a "tip credit"

against their minimum wage obligations with respect to Plaintiff.

31.   More specifically, Defendants paid Plaintiff $2.13 per hour in direct wages and claimed a tip credit for the difference between Plaintiff's direct wage rate and the federal minimum wage of $7.25 per hour.

32.   When Plaintiff worked more than 40 hours per week (or "overtime"), Defendants paid Plaintiff $3.195 per hour in direct wages for her overtime hours and claimed a tip credit for the difference between Plaintiff's direct rate and the federal minimum wage applicable to overtime hours, which is $10.875 per hour (*i.e.*, the minimum rate of $7.25 multiplied by 1.5).

**DEFENDANTS UNLAWFULLY CLAIMED THE TIP CREDIT**

33.   To take a tip credit against their minimum wage obligation, Defendants were required to permit Plaintiff to keep her tips.

34.   Defendants, however, did not permit Plaintiff to keep all of her tips.

35.   Most of the tips Plaintiff received were left by customers who paid and left tips for Plaintiff using their credit cards.

36.   When Defendants issued Plaintiff's tips through payroll, Defendants deducted a portion of Plaintiff's "Credit Card Tips" to be shared with the bartending staff.

37.   Defendants identified the amount contributed to the bartending

staff as "Tip Share Cont" on her earnings statements.

38.    At the beginning of her employment, all of Plaintiff's tips (except those left in cash and declared by Plaintiff) were identified as "Credit Card Tips" and were issued to Plaintiff after deducting the portion shared with the bartenders.

39.    During Plaintiff's tenure, Defendants began identifying a portion of her tips as "Tips In."

40.    Defendants deducted the amount listed as "Tips In" from the total amount issued to Plaintiff.

41.    By retaining the amount of Plaintiff's tips listed as "Tips In," Defendants did not permit Plaintiff to retain her tips.

42.    Because Defendants did not permit Plaintiff to keep her tips, Defendants cannot claim a tip credit against the federal minimum wage and must pay Plaintiff the full minimum wage.

43.    Furthermore, by paying Plaintiff only $3.195 per hour for each overtime hour worked, Defendants claimed a tip credit in excess of the maximum credit permitted by federal law for the hours Plaintiff worked in excess of 40 per week.

44.    By paying Plaintiff only $3.195 per overtime hour, Defendants sought to claim a tip credit of $7.68, which exceeds the maximum credit of

$5.12 per hour permitted by federal law.

45.     Because Defendants did not pay Plaintiff the required direct wage rate for all overtime hours worked, Defendants cannot claim the tip credit against the federal minimum wage and must pay Plaintiff the full minimum wage that applies to overtime hours.

46.     Defendants' failure to pay Plaintiff the minimum wage for all hours worked was willful.

47.     Defendants knew, or should have known, that they were required to permit Plaintiff to retain her tips to claim the tip credit.

48.     Defendants knew or should have known that they could not take a tip credit in excess of the credit permitted by federal law.

**DEFENDANTS UNLAWFULLY RETALIATED AGAINST PLAINTIFF**

49.     When Plaintiff realized that Defendants were deducting the amount listed as "Tips In" from her pay checks, Plaintiff discussed the deductions with another employee who experienced the same deductions.

50.     Plaintiff first complained to Defendants that she was not permitted to retain all of her tips in approximately July of 2019.

51.     Defendants initially told Plaintiff that the deductions were to cover the cost of insurance for Plaintiff's dependent children.

52.     Plaintiff, however, did not have any dependent children.

53.     Plaintiff subsequently complained multiple times that she was not permitted to retain all of her tips.

54.     Plaintiff began to experience increasingly hostile treatment by her supervisor.

55.     In February 2020, Defendants terminated Plaintiff's employment.

56.     Defendants terminated Plaintiff's employment because she had complained that she was not permitted to retain all of her tips.

### COUNT 1: WILLFUL FAILURE TO PAY MINIMUM WAGES

57.     Defendants claimed a tip credit against their federal minimum wage obligations with respect to Plaintiff.

58.     Defendants paid Plaintiff less than $7.25 per hour in direct wages.

59.     Defendants cannot legally claim the tip credit because Defendants did not permit Plaintiff to keep her tips.

60.     Because Defendants could not legally claim a tip credit, Defendants were required to pay Plaintiff direct wages at a rate of not less than the federal minimum wage.

61.     Defendants failed to pay Plaintiff a direct wage of not less than the minimum wage for all hours worked.

62.     Defendants willfully violated the FLSA's minimum wage requirement.

63.    Plaintiff is entitled to her unpaid minimum wages, the return of all unlawfully retained tips, liquidated damages in an amount equal to all unpaid wages and unlawfully retained tips, and her attorney's fees and costs.

**COUNT 2: WILLFUL FAILURE TO PAY OVERTIME WAGES**

64.    Defendants claimed a tip credit against their minimum wage obligations when Plaintiff worked hours in excess of 40 per week (or "overtime" hours).

65.    However, Defendants cannot claim the tip credit for Plaintiff's overtime hours because Defendants fail to pay Plaintiff direct wages of at least $5.755 per overtime hour before taking the tip credit.

66.    Because Defendants could not legally claim a tip credit, Defendants were required to pay Plaintiff direct wages at a rate of not less than one and one-half times the federal minimum wage of $7.25 per hour (*i.e.*, not less than $10.875) for all hours worked in excess of 40 per week.

67.    Defendants failed to pay Plaintiff a direct wage of $10.875 for all hours worked in excess of 40 per week.

68.    Defendants willfully violated the FLSA's overtime requirement.

69.    Plaintiff is entitled to her unpaid overtime wages, the return of all unlawfully retained tips, liquidated damages in an amount equal to all unpaid wages and unlawfully retained tips, and her attorney's fees and costs.

## COUNT 3: RETALIATION

70.     Plaintiff complained to Defendants that she was not permitted to retain her tips because Defendants were deducting a portion of her tips from her total pay each pay period.

71.     By complaining to Defendants that she was not permitted to retain her tips, Plaintiff engaged in activity protected by the FLSA.

72.     Defendants terminated Plaintiff's employment.

73.     Plaintiff's statutorily protected activity was the "but for" cause of her termination.

74.     Because Defendants violated the FLSA's antiretaliation provision, Plaintiff is entitled to: (1) back pay; (2) compensatory damages; (3) prejudgment interest; and (4) her attorney's fees and costs of litigation.

## DEMAND FOR JUDGMENT

Plaintiff respectfully requests that the Court:

I.      Enter judgment in Plaintiff's favor that Defendants' actions, policies, and practices violated, and continue to violate, the rights of Plaintiff under the FLSA;

II.     Enter judgment in Plaintiff's favor that Defendants' violation of the FLSA is willful;

III.    Award Plaintiff all unpaid wages for a period dating back three

years from the date this Complaint was filed;

IV.     Award Plaintiff liquidated damages in an amount equal to her unpaid wages;

V.      Award Plaintiff all illegally retained tips;

VI.     Award Plaintiff liquidated damages in an amount equal to her unlawfully retained tips;

VII.    Award Plaintiff back pay resulting from Defendants' retaliatory termination of her employment;

VIII.   Award Plaintiff compensatory damages resulting from Defendants' retaliatory termination of her employment;

IX.     Award Plaintiff prejudgment interest;

X.      Award Plaintiff her attorney's fees and costs; and

XI.     Award all other relief to which Plaintiff may be entitled.

## DEMAND FOR TRIAL BY JURY

Plaintiff requests a trial by jury pursuant to Fed. R. Civ. P. 38.

Respectfully submitted Monday, November 15, 2021,

**PARKS, CHESIN & WALBERT, P.C.**
75 Fourteenth Street, 26th Floor
Atlanta, Georgia 30309
404-873-8000
jmays@pcwlawfirm.com
dcrawford@pcwlawfirm.com

*/s/ John L. Mays*
John L. Mays
Georgia Bar No. 986574
Dustin L. Crawford
Georgia Bar No. 758916

*Counsel for Plaintiff*